Swing, J.
*266 This cause is in this court on error to the judgment of the court of common pleas. In that court plaintiff in error brought an action for an injunction. It was sought to enjoin the defendants, the Sinking Fund Trustees of the city of Cicinnati, from issuing the bonds of said city for the purpose of redeeming certain other bonds hitherto issued by said city in the sum of $2,973,000. It was alleged that said defendants had no power to issue said bonds, for two reasons: 1st. That the statute did not authorize the refunding of the bonds proposed to be refunded, for the reason that they were street improvement bonds; and, 2d," That the bonds proposed to be issued provided that said bonds should be paid principal and interest in gold.
The defendant filed a demurrer to plaintiff’s petition, which demurrer the court of common pleas, without árgument, sustained, and thereupon plaintiff brought the cause into this court on error to the judgment of the court of common pleas in sustaining said demurrer.
Whatever power the defendants have to issue the bonds in question, is contained in sec. 2729a, Rev. Stat., which is as follows: “That the Sinking Fund Commissioners in cities of the first grade of the first class for the purpose of refunding the bonded debt, exclusive of street improvement bonds of the city for which said trustees act, at a lower rate of interest, and for the purpose of buying the fee-simple of real estate held by the city under perpetual leases * * '* shall have power to make and issue the bonds of such city with coupons or registered, due in fifty years, and redeemable thirty years from date, bearing interest at a rate not greater than five per centum per annum, payable semi-annually, to an aggregate amount not exceeding twenty-six millions of dollars * * V’
The bonds in question proposed to be redeemed were issued under a special act of the legislature authorizing the improvement of the streets of said city with granite blocks, *267 asplialt and other material, and it is urged that the above section prevents the refunding of such bonds.
The words of the section certainly would cover such bonds if there was any reason to think that they were intended to embrace them. But we are of the opinion that the street improvement bonds covered by the statute are the bonds issued by the city for street improvements, and which said bonds are to be redeemed by monies collected by assessment on the property abutting on the improvement. Having collected the money by assessment to pay the bonds which the city had in the first instance issued,it certainly could not be contemplated that the bonds should be refunded when the city had the money in its treasury for their payment. But the bonds in question were wholly the debt of the city, with no secondary liability resting on any property for their payment, and-they should only be paid like any other debt of the city by a tax on all the property of the city, and they differed in no respect from any other bonded indebtedness of the city. We see no reason why bonds issued by the city for street improvements which are in every respect like other bonds issued by the city, should not be refunded while such other bonds might be. And there being a class of street improvement bonds which in reason should not be refunded, the city having collected the money to pay the -same, we feel assured that it was the intention of the legislature that the provision of this section prohibiting the refunding of street improvement bonds was intended to apply to the latter, and not the former.
Have the defendants the power to make the bonds payable principal and interest in gold ?
Spear, Judge, at p. 121, in 45 Ohio St., in a few words defines the limits of the powers of municipal corporations. He says: ‘ ‘ Indeed it is conceded by the learned counsel for plaintiff that the power to pass the ordinance does not exist unless it has been expressly granted by the legislature or is *268 clearly implied, and there is no doubt that this is the law. Power to enact such an ordinance would not be inherent in the council. Except as to incidental powers such as are essential to the very life of the corporation, the presumption is that the state has granted in clear and unmistakable terms all it is designed to grant at all. Doubtful claims to power are resolved against the corporation.-”
The law authorizes the issuing of “bonds” to the extent of “twenty-six million dollars.” It does not in terms authorize the issuing of bonds payable in gold. Is the power to issue bonds payable in gold an incidental power essential to the very life of the power granted herein to the corporation ? If not, the word “gold” can not be read into the law.
The word “dollar,” the only word used in the law which limits the word ‘ ‘ bond, ’ ’ may be defined to be the unit of value of money as enacted by the congress of the United States, and at the time of the passage of the law in question, as well as at the present time, the dollar of the United States consisted of a legal tender currency dollar redeemable in gold or silver coin of the United States, and the gold coin and silver coin of the United States. So that a bond of the city of Cincinnati, payable in dollars, might be paid either in legal tender currency, or gold or silver coin, and therefore a bond payable in gold “dollars” would be a limitation on the “dollars” used in the statute, in that it would exclude the payment of said bond in legal tender currency or silver coin.
That the insertion of the word ‘ ‘ gold’ ’ makes a material limitation on the word ‘ ‘ dollars'’ ’ used in the statutes is not denied, the very object in making the bonds payable in gold being to make that limitation, the claim of the defendants being that it would be wise for them to do so, as it would enable them to dispose of the bonds to better advantage. Whether it would be wise or not to make^this limitation, is a matter we have nothing to do with, the only question for our consideration being whether the legislature has granted the *269 power to the defendants to so act. We are unable to see how it can be claimed that it is essential to the power to issue bonds that they should be gold bonds. The court will take notice of the fact, which everybody knows, that the city of Cincinnati can very readily sell its bonds payable in “dollars.”
The power to issue gold bonds not being expressly granted, and it not being essential that the bonds should be made payable in gold in order that they may be sold, it cannot be an implied power to make them payable in gold.
It therefore seems to us that there is no authority given in the statute for the defendants to issue gold bonds. That the legislature never intended to grant this power it seems to us. clear when the acts of the legislature at other times in relation to issuing bonds are considered.
Sec. 8307, passed in 1869, authorizes the city of Cincinnati to issue bonds in the sum of ten million dollars for the purpose of building the Southern Railroad. In 1875 the legislature authorized the said city to issue six million dollars bonds for the completion of said road — said bonds to be payable in “gold” or lawful money. In 1878 the legislature authorized said city to issue two million dollars in bonds payable in ‘1 coin5 ’ or lawful money. In the same year the legislature authorized a further issue of two million dollars in bonds payable in “coin” or lawful money.
In 1880 the legislature authorized said city to issue bonds for three hundred thousand dollars, payable in “coin” or lawful money.
The intention of the legislature in each of these acts, it seems to us, is plain, especially when considered together. The first issue of ten million dollars of bonds, which is the same wording as the present act, did not authorize the city to issue gold or coin bonds. But the next act (1875) did in express terms'authorize the issue of gold bonds, thus clearly indicating that the legislature did not intend that gold bonds *270 should- be issued unless it gave the authority in express terms. This is further shown by the three succeeding acts in which the city is authorized to issue “coin” or lawful money bonds. Clearly under these acts gold bonds could not have been issued,for “coin” meant much more than gold; it meant gold and silver.
It is entirely proper that in considering these acts we should take notice of the discussion in the public press and the acts of the Trustees and others interested in disposing of these bonds, which led to the legislature authorizing the bonds to be made payable in “gold’ and “coin.” There was no question but what it was thought necessary that in order that the bonds might be made payable in gold or coin, that there should be the express grant by the legislature authorizing it, and that the authority to issue bonds payable in “dollars” would not be sufficient.
As bearing on the question at issue, we think the recent acts of the government of the United States throw some light. The government desired to issue bonds to the extent of $05,000,000. The law of congress authorized the issue of bonds payable in “coin.” The secretary of the treasury wanted to issue bonds payable in ‘ ‘gold coin, ’ ’ claiming that by doing so a saving of more, than $15,000,000 would be made. But he did not claim that under the law he had the right to issue gold coin bonds. The President, by special message to congress, asked authority to make the bonds payable ' in gold coin, which congress refused to grant, thus showing that both the executive department of the government, and congress, placed an interpretation on the law, that when the word coin was used, there being two kinds of coin, it meant both kinds of coin, and that it could not be limited by making them payable in one kind.
Two decisions have been cited to us, the 87 Ala. 240, and the Court of Appeals of Kentucky, reported in the Ky. Law Rep. 856, which held a contrary doctrine; and while we recognize the fact that these decisions call for the very *271 highest consideration, it seems to us that the reasons upon which they are based are not applicable to the cases decided, and that they are contrary to the views of our own Supreme Court, as above cited.
Fred. Hertenstein, City Solicitor, for City.
Thornton M. Hinkle, for Sinking Fund Commissioners.
Under the laws of our state millions of bonds have been issued within the last*thirty years. They have been “dollar” bonds, and so far as we are aware, none have been issued payable in gold or coin except such as have been expressly authorized to be so issued, and this is the first time that the right has been asserted as far as our knowledge goes. The interpretation placed on acts similarly worded in our state covering so long a period under like circumstances is certainly entitled to great weight.
While it might be to the advantage of the city in this particular instance to issue these bonds payable in gold, we think it contrary to the policy of our state as expressed in its acts hitherto, and we should very much doubt the wisdom of such a policy, for it would certainly lead to a great deal of confusion to have gold bonds, silver bonds and currency bonds; for it certainly must be desirable for the state that all its bonds should be of equal value, and that they should all be payable in the unit of value as fixed by the congress of United States as being a legal tender. Certainly it is not to the interest of the state that it should aid in making a distinction in the value of its bonds. Whether the condition of the country is such that the distinction can not be prevented must be a source of regret to all. But, however that may be, the power to make the change.must be obtained from the legislature, for it seems clear to us that it has not been granted by it.
The judgment of the court of common pleas is reversed, and the cause remanded with instructions to overrule the demurrer, and unless the defendants desire to further plead, that an injunction be granted.